## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **PAULA SILVA, Individually and** | § | |
| **On Behalf of All Others Similarly** | § | |
| **Situated** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **TEGRITY PERSONNEL SERVICES,** | § | **Civ. Action No. 4:13-cv-00860** |
| **INC.; MAKE READY SERVICES, LLC;** | § | |
| **DYNAMIC LABOR SERVICES, LLC;** | § | |
| **PRESTIGE LABOR & SERVICES,** | § | |
| **LLC; and IGLOO PRODUCTS** | § | |
| **CORP.** | § | |
| | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM & ORDER</u>

This case arises out of an employment relationship between Plaintiffs and at least one of

Defendants Tegrity Personnel Services, Inc., Make Ready Services, LLC, Dynamic Labor

Services, LLC, Prestige Labor & Services, LLC, and Igloo Products Corp.  Before the Court are

four motions that are ripe for decision: Plaintiffs' Motion for Class Certification (Doc. No 25);

Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No 32);

Defendants' Motion to Strike a Notice of Consent (Doc. No 69); and Defendants' Motion to

Strike Plaintiffs' First Amended Complaint (Doc. No. 70).  Defendants have also filed a Motion

to Compel Arbitration (Doc. No. 80), but that motion is not yet fully briefed.  Most of this

Memorandum & Order addresses Defendants' Motion to Dismiss, in which Defendants argue

that offers of judgment they made to Plaintiffs moot all claims and therefore deprive this Court

of jurisdiction.  After considering that Motion, all responses and replies, and the applicable law,

the Court concludes that the Motion should be **DENIED.**  The Court further concludes that both

1

Motions to Strike should likewise be **DENIED**.  Finally, the Court determines that a hearing is necessary before it can rule on the Motion to Certify.

## I.     BACKGROUND

On March 27, 2013, Plaintiff Paula Silva filed suit against Defendants Tegrity Personnel Services, Inc. ("Tegrity); Make Ready Services, LLC; Dynamic Labor Services, LLC; Prestige Labor & Services LLC; and Igloo Products Corp.[1]  (Doc. No. 1 at 1.)  In her complaint, Plaintiff alleged violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.*, and sought to recover unpaid overtime wages "on behalf of herself and all other similarly situated employees."  (Doc No. 1 at 1.)  "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."  *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013).  It "provides that an employee may bring an action to recover damages for specified violations of the Act on behalf of himself and other 'similarly situated' employees."  *Id.* at 1526.  "A suit brought on behalf of other employees is known as a 'collective action.'"  *Id.* at 1527 (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989)).  Silva also claimed that she had been retaliated against in violation of 29 U.S.C. § 215(a)(3).

The same day she filed her complaint, Silva and another individual, Seferino Coronado, filed Notices of Consent, thereby opting in to the lawsuit and accepting representation from Silva's counsel.  (Doc Nos. 2, 3.)  In response, on June 19, 2013, Defendants presented Silva and Coronado with offers of judgment pursuant to Federal Rule of Civil Procedure 68.  (Doc. Nos. 32-4, 32-5.)  Without accepting that offer, Plaintiff filed a Motion to Certify the Class as a collective action pursuant to 29 U.S.C. § 216(b) on June 28.  (Doc. No. 25.)  That same day, four

---

[1] As used throughout the opinion, "Plaintiff" refers just to Silva, whereas "Plaintiffs" refers, unless otherwise noted, to Silva and all others who had opted into this suit as of the day the Motion to Dismiss was filed.

additional Plaintiffs — Jesse Saldivar, Andres Terriquez, Bobby Tolbert, and Roy Cavazos — also filed Notices of Consent to join in the suit. (Doc. Nos. 26-29.) On July 3, each was promptly made a Rule 68 offer of judgment. (Doc. Nos. 32-7, 32-8, 32-9, 32-10.) On July 9, one more Plaintiff, Gary Gallardo, filed a Notice of Consent. (Doc. No. 30.) He received a Rule 68 offer of judgment that very same day. (Doc. No. 32-11.) Defendants contend that each of the seven offers they extended "fully satisfied [Plaintiffs'] wage claims." (Doc. No. 32 at 2.) Plaintiffs dispute whether that is so. (Doc. No. 34 at 11.)

Defendants filed this motion to dismiss on July 9. (Doc. No. 32.) By then, the Rule 68 offers to Silva and Coronado had lapsed. *See* Fed. R. Civ. P. 68 ("If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service."). The offers to Saldivar, Terriquez, Tolbert, and Cavazos were set to lapse eight days later, and the offer to Gallardo still would be live for another fourteen days. Nevertheless, Defendants filed this motion, arguing that their Rule 68 offers rendered — or would soon render[2] — Plaintiffs' claims moot, thereby divesting this Court of subject matter jurisdiction. (Doc. No. 32 at 2.) None of Plaintiffs ultimately accepted Defendants' Rule 68 offers.

The Court heard argument on Defendants' Motion on October 15, 2013. Prior to that hearing, the Court reached out to the parties to encourage them to bring forward any evidence that would bear on whether the Rule 68 offers would have provided complete relief. In fact, Defendants sought this Court's intervention in order to ensure that any such evidence was produced in a timely fashion. (Doc. No. 63.) Defendants submitted time records for each of the seven Plaintiffs that helped to show the Court how Defendants formulated their offers. (Doc. No. 64.) Plaintiffs, in contrast, focused primarily on legal arguments — and presented the Court

---

[2] And by the date of this Memorandum & Opinion, have rendered.

after the hearing with a Notice of Additional Authority (Doc. No. 65) — rather than introducing anything that would have addressed the pure factual question of whether Defendants' offers would have provided total relief.

After the Oct. 15 hearing, however, Plaintiffs changed course. They filed a new Notice of Consent[3] and an Amended Complaint. (Doc. Nos. 66, 68.) Defendants have moved to strike both. (Doc. Nos. 69, 70.) Among other things, the Amended Complaint designated Jennifer Terriquez, who had opted in the day before, as a named Plaintiff. (Doc. No. 68 at 1.) Plaintiffs attached Declarations to their Amended Complaint, seeking to convince the Court that the Rule 68 Offers would *not* have provided total relief. (Doc. Nos. 68-1, 68-2, 68-3, 68-4.) Those Declarations set forth specific instances of work for which Plaintiffs were allegedly not compensated and for which the Rule 68 offers allegedly did not account. The Court asked Defendants to respond and explain why their offers nevertheless provided complete relief. (Doc. No. 73.) The Court also gave Plaintiffs a chance to respond. (*Id.*)

## II.     MOTION TO DISMISS

### A.  Legal Standard

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 101 (5th Cir. 1998). A finding that the court lacks subject matter jurisdiction may be based upon: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed

---

[3] The new Notice of Consent, filed on behalf of Jennifer Terriquez, was dated June 27, 2013, but was not filed until Oct. 16, 2013. Terriquez has not offered an explanation as to why she waited more than three months to file.

facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996). Importantly, the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B.  Analysis

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "[W]hen the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," a case is considered moot. *Id.* at 396 (internal quotation marks omitted). "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). In turn, "the definitive mootness of a case or controversy . . . ousts the jurisdiction of the federal courts and requires dismissal of the case." *Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 335 (1980); *see also Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008) ("If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents.").

Defendants argue that this suit became moot on July 23, 2013. (*See, e.g.*, Doc. No. 70 at 1.) As of that date, all of the Plaintiffs that had opted into this suit had received Rule 68 offers, and all of those offers had expired. Because "an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation," *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)), if Defendants are correct that the unaccepted offers mooted the case, on July 23 Plaintiffs were "deprive[d] . . . of a 'personal stake in the outcome of the lawsuit,'" and the action "must be dismissed as moot."

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (quoting *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477-78 (1990)); *see also Already*, 133 S. Ct. at 727 ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" (quoting *Alvarez*, 558 U.S. at 93)); *Al-Farook v. Marina Dist. Dev. Co., LLC*, No. CIV.A. 13-138 MAS, 2013 WL 6177933, at \*3 (D.N.J. Nov. 25, 2013) ("[A] federal court's jurisdiction evaporates when, for whatever reason, a ripened controversy becomes academic.").

Thus, for the purposes of resolving this Motion, the Court cannot consider any developments that took place after July 23.  It can, of course, consider briefing and evidence submitted after that date, but the Court must rule on the motion on the basis of the facts as they stood on July 23.  As such, Terriquez's Notice of Consent and the Amended Complaint cannot be considered for present purposes.[4]  This is in keeping with the principle that "a case that is factually moot under Article III cannot be cured by amendment of the complaint."  *Mabary v. Hometown Bank, N.A.*, 276 F.R.D. 196, 205 (S.D. Tex. 2011) (Ellison, J.).

## 1.

With respect to Defendants' contention that the unaccepted Rule 68 offers rendered this suit moot on July 23, the parties have ably identified the two most relevant cases: the Supreme Court's recent decision in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), and the Fifth Circuit's decision in *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2008).  The challenge, however, is that this case lies in the interstices of *Symczyk* and *Sandoz*.  The Court first considers the Fifth Circuit's 2008 *Sandoz* decision and then turns to how the Supreme

---

[4] The Court herein rules on the Motions to Strike those documents, but not until it has resolved the Motion to Dismiss.

Court's decision last spring in *Symczyk* alters the landscape.  The Court next proceeds to situate this case among them.  The condensed version is this: Plaintiffs have brought this suit at a time when the law of this circuit is very much against them.

      a.  *The Fifth Circuit Weighs In: Mootness With An Out*

In *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2008), the Fifth Circuit "deal[t] with the difficult question of when an employer can moot a purported [FLSA] collective action." *Id.* at 914.  Sandoz initially filed her FLSA claim in state court, Cingular removed to federal court, and soon thereafter — before any other individuals had joined in the action — defendant made Sandoz a Rule 68 offer of judgment. *Id.*  When Sandoz failed to accept that offer, Cingular moved to dismiss for lack of subject matter jurisdiction, but the district court denied that motion. *Id.*  The Fifth Circuit agreed to take up an interlocutory appeal.

To be precise, the Court of Appeals framed the issue thus: "whether a FLSA claim becomes moot when the purported representative of a collective action receives an offer that would satisfy his or her individual claim and no other plaintiffs have opted in to the collective action." *Id.* at 915.  After a lengthy discussion of whether cases construing mootness in the context of Rule 23 class actions could bear on mootness in the context of FLSA collective actions, the Fifth Circuit determined that "the district court improperly applied the precise rules from the Rule 23 context." *Id.* at 919.  Moreover, the court of appeals explained that it "f[ou]nd persuasive the Eleventh Circuit's ruling in [*Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240 (11th Cir. 2003)] that there is a difference between when a Rule 23 class action and a FLSA collective action can become moot, because, unlike in a Rule 23 class action, in a FLSA collective action the plaintiff represents only him- or herself until similarly-situated employees opt in." *Id*.  As such, the Fifth Circuit held that

the language of § 216(b) and the cases construing that provision demonstrate that Sandoz cannot represent any other employees until they affirmatively opt in to the collective action.  This means that when Cingular made its offer of judgment, Sandoz represented only herself, and the offer of judgment fully satisfied her individual claims.

*Id*.  Had that been all the Fifth Circuit had said, it would be rather clear that, at least in cases where no one has joined the named plaintiff's suit, Rule 68 offers of judgment render plaintiffs' claims moot.[5]

But the Fifth Circuit figured out a way around that holding.  Instead, it accepted Sandoz's argument:

that allowing a defendant to moot a collective action in this manner would violate the policies behind the FLSA because a plaintiff never would be able to certify a collective action. We agree that the mootness principles discussed above would provide an incentive for employers to use Rule 68 as a sword, "picking off" representative plaintiffs and avoiding ever having to face a collective action. Conceptually, this would seem to be the logical result of the interplay between FLSA § 216(b) and Rule 68. Luckily, however, the relation back doctrine provides a mechanism to avoid this anomaly.

*Sandoz*, 553 F.3d at 919.  Relying on the Supreme Court's decisions in *Sosna v. Iowa*, 419 U.S. 393 (1975) and *Geraghty*, 445 U.S. 388, both of which were Rule 23 class actions, the Fifth Circuit explained that "the 'relation back' principle ensures that plaintiffs can reach the certification stage."  *Sandoz*, 553 F.3d at 919.  The court acknowledged that it was relying upon Rule 23 cases, but determined that "the differences between class actions and FLSA § 216(b) collective actions do not compel a different result regarding whether a certification motion can 'relate back' to the filing of the complaint."  *Id.* at 920.

Consequently, the Fifth Circuit concluded that "when a FLSA plaintiff files a timely motion for certification of a collective action, that motion relates back to the date the plaintiff filed the initial complaint, particularly when one of the defendant's first actions is to make a Rule

---

[5] It will be noted that there is a potentially dispositive difference in the case now before the court, which is that additional plaintiffs *have* joined Silva.  The Court addresses that below.

8

68 offer of judgment."  *Id.* at 920-21.  The court went on to explain that "[i]f the court ultimately grants the motion to certify, then the Rule 68 offer to the individual plaintiff would not fully satisfy the claims of everyone in the collective action; if the court denies the motion to certify, then the Rule 68 offer of judgment renders the individual plaintiff's claims moot."  *Id.*

Were that the end of the story, this Court could conclude that, even if Defendants' Rule 68 offers of judgment mooted the personal claims of those who have opted in, the relation-back doctrine would save the suit from dismissal, at least pending a ruling on the motion for certification.  *Symczyk*, however, would compel a different result.

b.  *Supreme Court Leaves Fifth Circuit Mootness Doctrine In Place*

Symczyk filed an FLSA suit on behalf of herself and other similarly situated employees of a healthcare facility in Philadelphia.  *Symczyk*, 133 S. Ct. at 1527.  When defendant answered plaintiff's complaint, it also served her with a Rule 68 offer of judgment.  *Id.*  Plaintiff did not accept that offer before it lapsed, prompting defendant to move to dismiss for lack of subject matter jurisdiction.  *Id.*  It argued, as defendants do here, that, given that no other individuals had joined plaintiff's suit, plaintiff "no longer possessed a personal stake in the outcome of the suit, rendering the action moot."  *Id.*  The district court "concluded that petitioners' Rule 68 offer of judgment mooted respondent's suit and dismissed it for lack of subject-matter jurisdiction."  *Id.*  The Third Circuit agreed that "under its precedents, whether or not such an offer is accepted, it generally moots a plaintiff's claim."  *Id.* (citing *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 195 (3d Cir. 2011)).  The court of appeals nevertheless held that the collective action was not moot.  *Id.*  "It explained that calculated attempts by some defendants to 'pick off' named plaintiffs with strategic Rule 68 offers before certification could short circuit the process, and, thereby, frustrate the goals of collective actions."  *Id.* (citing 656 F.3d at 196-98).  The Third

Circuit remanded for plaintiff to seek conditional certification, explaining that if plaintiff was successful, it would relate "the certification motion back to the date on which respondent filed her complaint." *Id*. at 1527-28.  In short, it reached the same conclusion as the *Sandoz* court, which it in fact cited favorably throughout its decision.  *Symczyk*, 656 F.3d at 197-201.

The Supreme Court granted certiorari, but it did not decide the basic mootness question. Rather, the Court noted that "the Courts of Appeals disagree whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot," *id*. at 1528, but held that plaintiff had waived the opportunity to contest mootness, *id*. at 1529.  The Court therefore "assume[d], without deciding, that petitioners' Rule 68 offer mooted respondent's individual claim."  *Id*. at 1529.

Writing for four justices, Justice Kagan made abundantly clear that the dissenters would not have so held.  Addressing the theory of mootness argued and accepted below, Justice Kagan proclaimed that the defendant, the district court, and the court of appeals were, respectively, "wrong, wrong, and wrong again."  *Id*. at 1533 (Kagan, J., dissenting).  She explained that

> "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."  *Chafin v. Chafin*, 568 U.S. ——, ——, 133 S. Ct. 1017, 1023, 185 L.Ed.2d 1 (2012) (internal quotation marks omitted).  "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  *Ibid.* (internal quotation marks omitted). By those measures, an unaccepted offer of judgment cannot moot a case.  When a plaintiff rejects such an offer—however good the terms—her interest in the lawsuit remains just what it was before.  And so too does the court's ability to grant her relief.  An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect.  As every first-year law student learns, the recipient's rejection of an offer "leaves the matter as if no offer had ever been made."  *Minneapolis & St. Louis R. Co. v. Columbus Rolling Mill*, 119 U.S. 149, 151, 7 S. Ct. 168, 30 L.Ed. 376 (1886).  Nothing in Rule 68 alters that basic principle; to the contrary, that rule specifies that "[a]n unaccepted offer is considered withdrawn."  Fed. Rule Civ. Proc. 68(b).

*Id.* at 1533-34.   Justice Kagan exhorted the Third Circuit to "[r]ethink [its] mootness-by-unaccepted-offer theory"; she urged "all other courts of appeals [not to] try this at home."  *Id.* at 1534.

Plaintiffs cite the *Symczyk* dissent throughout their briefing and with good reason.  This Court finds Justice Kagan's view persuasive.  Plaintiffs' problem, however, is that, per the holding of *Sandoz*, the Fifth Circuit has already 'tried this at home.'

c.   *The Supreme Court Narrows the Relation-Back Doctrine*

In the part of *Symczyk* that Justice Kagan suggested readers "relegate . . . to the furthest reaches of [their] mind," *id.* at 1533, a five-justice majority held that "[w]hile the FLSA authorizes an aggrieved employee to bring an action on behalf of himself and 'other employees similarly situated,' 29 U.S.C. § 216(b), the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied."  *Id.* at 1529 (majority op.).  In arguing to the contrary, Symczyk relied, as the *Sandoz* court did, on *Geraghty*, *Sosna*, and *Roper*.   But the Court rejected that argument and respondent's reliance on those cases, explaining that "Rule 23 actions are fundamentally different from collective actions under the FLSA."  *Id.*  Justice Thomas explained that

> essential to our decisions in *Sosna* and *Geraghty* was the fact that a putative class acquires an independent legal status once it is certified under Rule 23. Under the FLSA, by contrast, "conditional certification" does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, see *Hoffmann–La Roche Inc., supra,* at 171–172, 110 S. Ct. 482, who in turn become parties to a collective action only by filing written consent with the court, § 216(b). So even if respondent were to secure a conditional certification ruling on remand, nothing in that ruling would preserve her suit from mootness.

*Id.* at 1530.

The Court also rejected plaintiff's reliance on "cases invoking the 'inherently transitory' relation-back rationale," for the simple reason that FLSA actions for statutory damages are not inherently transitory.  *Id.* at 1531.  Thus, the Court held that "respondent has no personal interest in representing putative, unnamed claimants, nor any other continuing interest that would preserve her suit from mootness."  *Id.* at 1532.

**2.**

*Symczyk* did no favors to FLSA plaintiffs in the Fifth Circuit.  The decision left untouched the part of *Sandoz* that plaintiffs do not like and abrogated the part that plaintiffs do like.  That is, while *Symczyk* left open the possibility that the *Sandoz* court got mootness wrong — Justice Kagan has certainly indicated that at least four members of the Court feel that way — for now, *Sandoz* is good law and dictates that, in the Fifth Circuit, unaccepted Rule 68 offers can moot FLSA claims.  In contrast, whereas *Sandoz* offered a life raft in the form of the relation-back doctrine to plaintiffs whose personal FLSA claims were mooted by Rule 68 offers, *Symczyk* effectively overruled that half of *Sandoz*.  *Sandoz* and *Symczyk* put together would seem to require that this Court hold for defendants.

At a hearing held Oct. 15, 2013, Plaintiffs embraced that *Sandoz* controls but argued that *Symczyk* did not abrogate its holding.  As at least one other court in this circuit has recognized, that is not correct.  *See Masters v. Wells Fargo Bank S. Cent., N.A.*, No. A-12-CA-376-SS, 2013 WL 3713492, at *4 (W.D. Tex. July 11, 2013) ("The Fifth Circuit holds an unaccepted offer fully satisfying a claim does moot the claim, and this Court is bound to apply this rule, [plaintiff's] pleas to follow Justice Kagan's dissent notwithstanding.").  To support this argument, Plaintiffs rely primarily on the Fifth Circuit's insistence that plaintiffs should have "a chance to certify the collective action" before the suit is dismissed on mootness grounds.

*Sandoz*, 553 F.3d at 919.  But the way the Fifth Circuit created that chance was to employ the relation back doctrine.  And that is exactly what *Symczyk* said courts should not do.

Plaintiffs also argue that, after *Symczyk*, whether unaccepted offers of judgment moot FLSA claims is up to each circuit to decide.  That is exactly right.  But for all the reasons stated above, *Sandoz* decided the question for this circuit.  Nevertheless, Plaintiffs point the Court toward three cases that they believe support their contention that this Court should adopt Justice Kagan's dissent.  Each is unavailing.  First, in *Diaz v. First Am. Home Buyers Prot. Corp.*, the Ninth Circuit sided with Justice Kagan and "h[e]ld that an unaccepted Rule 68 offer that would have fully satisfied a plaintiff's claim does not render that claim moot." 732 F.3d 948, 954-55 (9th Cir. 2013).  It was free to do so because that court had *not* "squarely addressed the issue." *Id.* at 952.  In contrast, the *Diaz* Court noted that "the majority of courts and commentators appear to agree . . . that an unaccepted offer will moot a plaintiff's claim," and, in a footnote collecting cases that illustrated the proposition, it cited a decision by the Fifth Circuit.  *Id.* at 953 & n.5 (citing *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 502 (5th Cir. 2005)).  Thus, the *Diaz* court was not obligated to abide by *Sandoz* or another case holding the same.  This Court is.

In a second case relied upon by Plaintiffs, Judge Weinstein rightly noted that, after *Symczyk*, "[i]n the context of FLSA cases . . . the effect that a defendant's offer of judgment has on the viability of plaintiff's claim, and the overall lawsuit, is a question left to caselaw within the individual circuits." *Ritz v. Mike Rory Corp.*, No. 12-CV-0367, 2013 WL 4011061, at *3 (E.D.N.Y. Aug. 6, 2013).  But again, as was true when the Ninth Circuit confronted *Diaz*, the relevant court of appeals "ha[d] yet to rule on this issue." *Id.* at *3 (internal quotation marks omitted).  In *Ritz* as in *Diaz*, the court had the freedom to chart its own course.  This Court is not so unencumbered.

13

Finally, the Eleventh Circuit's unpublished *per curiam* opinion in *Wolff v. Royal Am. Mgmt., Inc.*, No. 12-15981, 2013 WL 5433773 (11th Cir. Oct. 1, 2013), does not advance the ball for Plaintiffs. There, the court determined that, because defendant did not make plaintiff a Rule 68 offer of judgment in addition to a cash settlement, it had not offered her complete relief and thus her claims were not moot. *Id.* at *3. The facts of that case, then, render *Wolff* inapposite.

Plaintiffs are left with three final arguments. First, they distinguish their case, where additional Plaintiffs *have* joined the named Plaintiff, from *Sandoz*. Second, they argue that none of the foregoing analysis matters because Defendants' Rule 68 offers cannot, as a matter of law, be characterized as providing complete relief. And third, they argue that, as a pure factual matter, the offers fail to provide Plaintiffs with all to which they are entitled. The court addresses those arguments next.

a. *Distinguishing Sandoz*

Seizing on the Court's statement in *Symczyk* that an FLSA claim is mooted only "[i]n the absence of any claimant's opting in," *Symczyk*, 133 S. Ct. at 1529, Plaintiffs argue that "[t]he corollary to that rule is necessarily that where other individuals have opted in (as in this case), a collective action is not moot, even if the named plaintiff's individual claim is moot, because the named plaintiff has a personal interest in representing others in that action." (Doc. No. 34 at 6.) Plaintiffs' attempt to distinguish *Symczyk* — which, since it did not actually decide when offers of judgment would moot a claim, did not really need to be distinguished — is really an attempt to distinguish *Sandoz*, which used similar language to (as Plaintiffs see it) cabin its holding. *See Sandoz*, 553 F.3d at 919 ("Sandoz cannot represent any other employees until they affirmatively opt in to the collective action. This means that when Cingular made its offer of judgment,

Sandoz represented only herself, and the offer of judgment fully satisfied her individual claims.").

The problem with relying on those statements is that once one examines the reasoning behind them, it becomes hard to see how that reasoning does not apply with equal force here.  A series of examples helps to illustrate why.  A FLSA collective action plaintiff — be it Symczyk, Sandoz, or Silva — "represents only him– or herself until similarly-situated employees opt in." *Id*.  Thus, at the moment such a plaintiff files her complaint, she is (potentially) entitled only to the backpay, or overtime, or other damages that defendant owes her and her alone.  She cannot seek — and is not entitled to — damages on behalf of others, even those similarly situated, who have not yet formally elected to join the suit.  She can, of course, seek to certify a collective action and have the court provide notice to potential class members, but until other individuals file notices of consent, the original plaintiff is technically only seeking, and only entitled to, her own damages.  So if the defendant makes plaintiff a Rule 68 offer that would provide all the relief that plaintiff has sought, courts in this circuit have — to Justice Kagan's chagrin — determined that plaintiff "no longer retains a personal interest in the outcome of the litigation." *Id*. ("This means that when Cingular made its offer of judgment, Sandoz represented only herself, and the offer of judgment fully satisfied her individual claims. If our analysis stopped there, Sandoz's case would be moot."); *see also Mabary v. Hometown Bank, N.A.*, 276 F.R.D. 196, 201 (S.D. Tex. 2011) (Ellison, J.) ("An offer of complete relief will generally moot a plaintiff's claim, as at that point she no longer retains a personal interest in the outcome of the litigation." (citing *Rand v. Monsanto Co.,* 926 F.2d 596, 598 (7th Cir. 1991))).

Let us say, however, that soon after an original plaintiff files suit seeking payment for ten hours of overtime, a second plaintiff files a notice of consent, seeking payment for five hours of

his own overtime.  Let us further say that sometime before a collective action was certified, defendant made the original plaintiff a Rule 68 offer that would have paid her for her ten hours of overtime.  But let us also say that defendant did *not* offer to pay the second plaintiff for *his* overtime.  In that scenario, because "other plaintiffs have opted in to the collective action," *Sandoz* would not compel dismissal.  553 F.3d at 915.  The original plaintiff would be authorized to seek payment for her ten hours of overtime *and* the second plaintiff's five hours of overtime. The Rule 68 offer, then, would not have given the original plaintiff all that she had sought and thus the suit would not be moot.  Plaintiffs' briefing ably makes this point.  But that is not *this* case.

To provide an example on all fours with the instant case, suppose that in the above scenario, defendant not only offered plaintiff a judgment that would have provided compensation for her ten hours, but also offered to pay the second plaintiff for his five hours.  In that scenario, even accounting for the fact that "plaintiff has a personal interest in representing others in that action," (Doc. No. 34 at 6), the Court would be forced to conclude that plaintiff was offered everything that she had sought.  And so the same rationale that required dismissal on mootness grounds in *Sandoz* would require dismissal.

So too in this case.  An additional six plaintiffs joined Silva's lawsuit.  But defendant made Rule 68 offers to them, too.  So long as those offers of judgment would have provided plaintiffs with all that they would be legally entitled to in the event of a judgment in their favor, the suit would become moot.

There is of course a compelling policy basis for wanting to find some distinction from *Sandoz*.  As the Fifth Circuit noted there, "[a] ruling that a defendant *always* can 'pick off' a named plaintiff's FLSA claims before the plaintiff has a chance to certify the collective action"

— and always comes even closer to actually meaning always post-*Symczyk* and its repudiation of the relation-back doctrine —"would obviate one purpose of the collective action provision." *Sandoz*, 553 F.3d at 918-19.  In fact, holding that, even here, Defendants' Rule 68 offers moot Plaintiffs' claims would essentially make it impossible for a collective action to take hold, at least so long as Defendants are willing to pay any potential claimants who come forward.  But this is an argument better directed at higher courts not bound by controlling precedent.[6]

Silva's last potentially meritorious argument is that defendants' Rule 68 offer fails to make her whole.  She offers a legal argument — that the Rule 68 offer does not offer class-wide relief, to which she is entitled — and a factual argument — that defendants have not even satisfied her own personal claims.  The former fails, but the latter carries the day.

b.  *Offer as Legally Insufficient*

Plaintiff's contention that she was not offered all that she sought in her complaint, because she was not offered class-wide relief (Doc. No. 34 at 8), fails as a matter of law.  It is true that Silva's complaint sought relief "on behalf of herself and all other similarly situated employees."  (Doc. No. 1 at 1.)  But that was true in *Sandoz* too, and the Fifth Circuit still found Sandoz's claim to be moot.  *See Sandoz v. Cingular Wireless, LLC*, No. CIV.A. 07-1308, 2008 WL 2073943, at *1 n.2 (W.D. La. May 13, 2008) (noting that Plaintiff's complaint stated that "Plaintiff brings this action pursuant to 29 U.S.C.A. § 216 on her own behalf and on behalf of all persons" who met certain criteria).  Looking more closely at what it means to be the original plaintiff in an FLSA collective action underscores why the instant case is not meaningfully different from *Sandoz*.  "Opt-in plaintiffs and original parties are treated the same under the

---

[6] And, to be fair, Defendants can muster compelling policy arguments too.  As they explained at the Oct. 15 hearing, protracted litigation in which potential class members are notified and extensive discovery is conducted may force Defendants, and other small businesses like them, to forever shutter their operations.  Allowing Defendants to satisfy each claim as it comes to light — thereby avoiding a drawn out lawsuit — allows smaller entities like Tegrity to take a short-term hit in order to avoid the possibility of a potentially devastating judgment at the end of a lawsuit.

FLSA.  Unlike a Rule 23 class-action, 'no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively opted into the class.'" *Muhammad v. GBJ, Inc.*, No. CIV.A. H-10-2816, 2011 WL 2357369, at *2 (S.D. Tex. June 10, 2011) (quoting *Sandoz*, 553 F.3d at 916).  That is, the original plaintiff has an important procedural role — moving for certification so that the court will notify other individuals who could potentially opt in to the suit — and, practically speaking, will often provide counsel for the rest of the class.  But unlike a Rule 23 named plaintiff, who *does* represent others similarly situated even when the additional class members are not personally involved in the suit, a FLSA collective action's original plaintiff cannot claim to represent absent individuals.  *See Sandoz*, 553 F.3d at 919.  The so-called "class" has no independent legal status.  The original plaintiff can technically seek relief only for other plaintiffs who have formally opted in, and as explained above, where all such plaintiffs have been offered full relief, the suit is moot.

Relatedly, Silva argued at the Oct. 15 hearing that she is entitled, as the named plaintiff, to an "incentive award" and that Defendants' Rule 68 offer did not provide her with one.  In support of that argument, Silva points the court to *Quintanilla v. A & R Demolition Inc.*, No. CIV.A. H-04-1965, 2008 WL 9410399 (S.D. Tex. May 7, 2008).  There, Quintanilla and nearly two dozen others brought suit against A&R Demolition seeking overtime and other compensation under the FLSA.  *Id.* at *1.  After a class was certified, discovery completed, and motion practice conducted, the parties agreed to settle.  *Id.*  They filed the terms of their agreement with the court and sought its approval.  *Id.*  One term of the settlement was that "[t]he original plaintiffs [were to] receive[] a $1,000 incentive award to compensate them for the costs they incurred to participate in this litigation, including travel costs, notary charges, and lost wages resulting from court appearances, interviews, and depositions."  *Id.* at *3.  After holding a

settlement fairness hearing, the court upheld the parties' agreement, including the incentive award. *Id.* at *2. Analyzing whether the settlement's terms were fair, the court explained that it "fairly and reasonably compensates the class representatives for the out-of-pocket expenses incurred and wages lost in assisting with this litigation." *Id.*

It does not follow from *Quintanilla* that all FLSA named plaintiffs, simply by virtue of filing suit, are entitled to incentive awards. After all, the incentive award in *Quintanilla* was the product of a private agreement reached by the parties, not a statutory entitlement granted by the FLSA. Moreover, the purpose of the incentive award was to compensate the original plaintiff for specific expenses and sacrifices.[7] *Cf. In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1090 (S.D. Tex. 2012) (explaining, in the context of a Rule 23 class action, that incentive awards "reward representative plaintiffs (and named plaintiffs) for their time and expenses spent advocating on behalf of the class," but that "[f]or the court to approve the incentive awards — even if they are nominal, and even if the defendant does not object — there must be some evidence in the record demonstrating that the representative plaintiffs were involved"). To the extent Silva incurred any such expenses here, the offer Defendants made her — and to all the other opt-in Plaintiffs — offered "attorneys' fees, costs and expenses as determined by the Court." (Doc. No. 32-4 at 2.) The speculative possibility that Silva might be awarded some *additional* incentive award beyond even what would provide

---

[7] To be sure, some courts have explained that one "purpose of [incentive award] payments is . . . to reward the public service of contributing to the enforcement of mandatory laws." *Altier v. Worley Catastrophe Response, LLC*, No. CIV.A. 11-241, 2012 WL 161824, at *15 (E.D. La. Jan. 18, 2012) (quoting *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011)). Still, acknowledging that an incentive award accounts for a plaintiff's willingness to organize her fellow employees does not transform that award into an entitlement. That this is so is bolstered by the fact that courts deny requests for incentive awards with some regularity. *See, e.g., Gortat v. Capala Bros.*, No. 07 CV 3629 ILG, 2013 WL 2566622, at *1 (E.D.N.Y. June 12, 2013) ("The staggering amount requested as incentive awards for the seven named plaintiffs is breathtaking and were the Court to grant it, would be an exercise of discretion inexcusably abused."); *Heartland Payment Systems*, 851 F. Supp. 2d at 1090; *Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847, 870 (S.D. Tex. 2011) (citing *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 410 (7th Cir. 2000)).

compensation for her expenses — and which was absent from her original complaint — does not justify the conclusion that Silva was offered less than full relief.

Alternately, Plaintiffs argue to the effect that here, unlike in *Symczyk*[8] and *Sandoz*,[9] Plaintiffs have opted to contest whether Defendants' offers would have provided total relief, and that that alone should be enough to defeat the motion to dismiss.  That argument boils down to: I did not accept the offer and I want a jury, not the defendant, to decide what I am owed.  There is superficial appeal to that argument.  Indeed, it begins to sound like Justice Kagan's explanation for why an unaccepted offer of judgment should not moot a plaintiff's claims.  But for the party that has the burden to establish the existence of jurisdiction, that is not enough.  Just as the Court could not find diversity jurisdiction proper simply because a plaintiff asserted that she hoped a jury would give her more than $75,000, and just as the Court could not find Article III standing proper simply because a plaintiff baldly asserted an injury in fact, an unsupported contention that she might recover more at trial than what was included in the Rule 68 offer of judgment cannot possibly be enough.

     c.  *Offer as Factually Insufficient*

On Oct. 17, Plaintiffs filed an Amended Complaint with several declarations attached to it.  In her declaration, Silva offers a series of reasons why Defendants' offer would not have provided complete relief.  She explains that "Tegrity's Offer of Settlement does not fully compensate me for the following:

- all unpaid regular and overtime wages;
- all hours that I was required to work off-the-clock;
- my lost wages as a result of the retaliation,

---

[8] *Symczyk v. Genesis Healthcare Corp.*, No. CIV. A. 09-5782, 2010 WL 2038676, at *2 (E.D. Pa. May 19, 2010) ("Symczyk does not take issue with Defendants' assertion that the damages offered exceed any amount of unpaid wages sought.").
[9] *Sandoz v. Cingular Wireless, LLC*, No. CIV.A. 07-1308, 2008 WL 2073943, at *1 (W.D. La. May 13, 2008) ("Plaintiff does not argue defendant's offer is insufficient to satisfy her individual demand.").

      •   and my incentive award for being the name plaintiff in this case."

(Doc. No. 68-1 at 1-2 (formatting added).)

With respect to Silva's retaliation claim, a litigant who succeeds on a Title VII retaliation claim is entitled to "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Plaintiff is correct that she has been offered no such thing. As a matter of fact, the Offer of Judgment itself states that "[t]his Offer is not intended to include any damages for Plaintiff's FLSA retaliation claim." (Doc. No. 32-4 at 4.)

The Court is hard pressed to see how how that retaliation claim does not grant Silva a "continuing interest that would preserve her suit from mootness." *Symczyk*, 133 S. Ct. at 1532. If she persists to a judgment, Silva is capable of obtaining redress from a jury that she was not offered by Defendant. That should be sufficient to keep the case alive.

Defendants offer little in response. Relegating their discussion of Silva's retaliation claim to a footnote in their supplemental brief, Defendants argue, with scant explanation, that the retaliation claim is "ineffectual with regard to dismissal." (Doc. No. 75 at 21 n.97.) They contend that the retaliation claim "makes Silva dissimilarly situated to those she seeks to represent" and thus they "request that those claims be severed." (*Id.*) Defendants further explain that "the Court concluded at the outset of this case that Plaintiffs' retaliation claim has no bearing on her class wide allegations, because the Court could require her to try those separately." (*Id.*) Defendants confuse two issues. It is true that, in response to Defendants' argument that Silva may not be well situated to serve as class representative, the Court expressed doubt as to how "the fact that Defendant has a pending . . . retaliation claim . . . would defeat the class action

request." (Doc. No. 48 at 13.)  It is also true that the Court suggested that it could "require her to try those separately." (*Id.*)  But the Court did not, in fact, sever the retaliation claim; it remains a part of Silva's complaint.  That the retaliation claim is one she does not share with the class has no bearing on whether she was offered relief for it.  She was not and therefore she "continues to have a personal stake in the outcome of this action."  *Higueros v. New York State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 349 (E.D.N.Y. 2007) (declining to dismiss a case as moot where "plaintiff ha[d] stated a retaliation claim pursuant to N.Y. Lab. Law § 215 and it [wa]s not known whether plaintiff's potential total recovery, inclusive of both her lost overtime claims and retaliation claims, would exceed the amount that the defendant has offered").  This case is not moot.

### 3.

Because Silva's claims are not moot, she can proceed to seek certification of a FLSA collective action.  The question then remains whether the Court must, at this juncture, determine whether the claims of Coronado, Saldivar, Andres Terriquez, Tolbert, Cavazos, and Gallardo — who have not alleged retaliation — have been mooted by the Rule 68 offers of judgment that Defendants made to each of them.

This is a highly fact-bound inquiry.  When confronted with situations like this one, where defendant has made a Rule 68 Offer of Judgment and then moved to dismiss on mootness grounds, courts regularly compare the offer with the plaintiff's complaint and supporting documents to determine whether the offer would indeed provide complete relief.  *See, e.g.*, *Ward v. Bank of New York*, 455 F. Supp. 2d 262, 268-70 (S.D.N.Y. 2006); *Reyes v. Carnival Corp.*, No. 04-21861-CIV, 2005 WL 4891058, at *3 (S.D. Fla. May 25, 2005); *Reed v. TJX Companies, Inc.*, No. 04 C 1247, 2004 WL 2415055, at *2 (N.D. Ill. Oct. 27, 2004).  But in each of those

cases, it was necessary to do so to determine whether the Court could maintain subject matter jurisdiction over the case.  Here, in light of Silva's retaliation claim, the court maintains subject matter jurisdiction and the case as a whole is going forward.  Thus, a decision in Defendants' favor with respect to the other Plaintiffs would narrow the scope of a potential collective action, and would limit Defendants' monetary exposure, but it would not make the case go away.  That decision would not, moreover, save Defendants from having to proceed with discovery or (potentially) collective action notification.

With that in mind, the Court defers its ruling on whether the Rule 68 offer mooted the claims of the other six early Plaintiffs.  Down the line, once additional discovery has taken place, Defendants should feel free to renew their motion in the form of a Motion for Summary Judgment.  At that juncture, the Court will be able to rule on whether Plaintiffs' claims were mooted with the benefit of additional evidence.  Indeed, while the parties ably answered the Court's request for supplemental briefing and have brought forward enlightening declarations and a modest amount of evidence, the Court is hesitant to resolve disputed questions of fact — for instance, were Plaintiffs *required* to arrive early to Tegrity facilities before their shifts? *Compare* Doc. Nos. 68-1 at 2-3; 68-2 at 2; 68-3 at 2; 68-4 at 2 *with* Doc. Nos. 75-1 at 2; 75-2 at 2; 75-3 at 2; 75-4 at 2; 75-5 at 2 — on such a bare record.  Considering Defendants' motion as one for summary judgment — or, at least, at the same time as the inevitable motions for summary judgment — also has the benefit of allowing the Court to consider the Motion in the context of other motions that are likely to arise, but which have not yet been fully briefed.  For instance, are all claims to compensation for time spent traveling from Tegrity facilities to Igloo barred by the Portal-to-Portal Act?  The parties begin to address that issue in their supplemental briefs, *see* Doc. Nos. 75 at 10-15, 76 at 4-6, but do not fully flesh out all of the important issues.

Because the answer to this question is important, not just to the instant motion, but also perhaps to future motions, addressing it later, with the benefit of more robust briefing and perhaps a hearing, is the more prudent course of action.

In short, Defendants' Motion to Dismiss (Doc. No. 32) is **DENIED** with respect to the claims of Silva. The Court defers a ruling on the claims of Coronado, Saldivar, Andres Terriquez, Tolbert, Cavazos, and Gallardo.

## III.   MOTIONS TO STRIKE

As discussed *supra*, the Court did not consider Jennifer Terriquez's Notice of Consent, or Plaintiffs' Amended Complaint, in deciding the Motion to Dismiss. With that Motion decided, however, the Court turns to the Motions to Strike the Notice of Consent (Doc. No. 69) and the Amended Complaint (Doc. No. 70). With respect to the Notice of Consent, Defendants' argument to strike it assumes that the case was moot as of July 23. (*See* Doc. No. 69 at 2.) Because the Court has herein rejected that premise, the Motion to Strike the Notice of Consent is **DENIED**.[10]

As for the Motion to Strike the First Amended Complaint, Defendants contend that Plaintiffs' filing of the amended complaint transgressed Federal Rule of Civil Procedure 15, which requires leave of the court to amend a complaint. Alternately, they argue that Rule 15 allows a party to amend their pleadings with the consent of the opposing party, but that consent was not obtained here. (*See* Doc. No. 70 at 3.)

---

[10] The Court does note that, for all the reasons discussed above in Section II.B.2.b, the fact that Jennifer Terriquez is listed as a named Plaintiff in the First Amended Complaint (*see* Doc. No. 68 at 1) is of absolutely no legal significance. Opt-in plaintiffs and original parties are treated the same under the FLSA. The "named" Plaintiff is just the first to file. *See Muhammad v. GBJ, Inc.*, No. CIV.A. H-10-2816, 2011 WL 2357369, at *2 (S.D. Tex. June 10, 2011). Relatedly, the Court is wary of the fact that Terriquez's Notice of Consent is dated June 27, but was not filed until Oct. 16. (*See* Doc. No. 66.) It is hard to see any reason, other than a desire to scuttle a potentially meritorious Motion to Dismiss, for such delay. But because the Court did not consider the Notice of Consent in ruling on the Motion to Dismiss, it considers this maneuver to be 'harmless error.'

Defendants are, of course, correct about what Rule 15 requires; Plaintiffs are admonished to adhere to the Federal Rules of Civil Procedure at all times.  But Defendants identify only two potential sources of prejudice that could arise from the filing of the Amended Complaint.  First, they point to the fact that the parties have engaged in seven months of discovery based on the original complaint.  While the Court is sensitive to that argument, it does not believe the two Complaints to be so fundamentally different as to require wholly separate discovery.  Second, Defendants note that the Amended Complaint was likely filed "as a thinly veiled effort to avoid dismissal."  (*Id.*)  Because the Court did not consider the Amended Complaint in ruling on the Motion to Dismiss, this argument can be ignored.  In short, because "[D]efendants have not shown that they would be prejudiced by the proposed amendment's filing," *Lee v. Wells Fargo Bank, N.A.*, No. CIV.A. H-11-1334, 2012 WL 6132510, at *2 (S.D. Tex. Dec. 10, 2012), the Motion to Strike is **DENIED.**

## IV.   MOTION TO CERTIFY

Plaintiffs moved some time ago for certification of a collective action pursuant to 29 U.S.C. § 216(b).  The Court is mindful of Plaintiffs' need for swift resolution of that motion and, like the parties, would like to move this case along.  At the same time, in light of all the time that has passed since the Motion was first filed and because Defendants have since filed a Motion to Compel Arbitration (Doc. No. 80 at 1) that could complicate matters, the Court is hesitant to rule on the Motion to Certify without the benefit of a hearing.  As such, the Court is tentatively set to hold argument on the Motion for Class Certification (Doc. No. 25) on Thursday, December 19, 2013 at 2 p.m.

## V.      CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 32) is **DENIED**, as are its two Motions to Strike (Doc. Nos. 69, 70).  The Court will see the parties on Dec. 19 at 2 p.m. to address the Motion to Certify (Doc. No. 25) and the Motion to Compel Arbitration. (Doc. No. 80.)

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this Fifth day of December, 2013.

_____

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**